UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAPITAL MORTGAGE
SOLUTIONS, LLC,

    Plaintiff,

v.

THE CINCINNATI
INSURANCE COMPANY,

    Defendant.
_____/

Case No. 2:21-cv-10873
District Judge Paul D. Borman
Magistrate Judge Kimberly G. Altman

## ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINION AND TESTIMONY (ECF No. 16)

I.     Introduction

This is an insurance case. Plaintiff Capital Mortgage Solutions, LLC (Capital) who has been assigned the rights to a homeowners insurance policy by its holder, Jason Curis (Curis), is suing Defendant, the Cincinnati Insurance Company (Cincinnati), the insurer. Capital seeks coverage for an August 28, 2020 loss on Curis's property for which Cincinnati denied coverage. Capital asserts claims for breach of contract, appraisal, and violations of the Michigan Uniform Trade Practices Act (MUTPA), all stemming from Cincinnati's failure to pay the claim. *See* ECF No. 1.

1

Before the Court is Cincinnati's motion to exclude the testimony and opinions of Capital's expert, Andrew Allocco, Professional Engineer (PE). (ECF No. 16). The motion was referred to the undersigned for a hearing and determination under 28 U.S.C. § 636(b)(1)(A).[1] (ECF No. 24). The motion is fully briefed and a hearing was held on November 1, 2022. For the reasons that follow, the motion will be DENIED.

## II.     Background/Policy Provisions

The insurance policy at issue in this case includes a rider that covers water damage that backs up from sewers or drains on the property, but not damage from flood or surface water, or resulting from "the inability of the sewer or drain to handle the amount of rainwater, surface water or groundwater trying to enter the sewer or drain." (ECF No. 2, PageID.63). Cincinnati contends that the loss "was caused by and resulted from surface water and flooding which are excluded perils, as well as the inability of the sump pumps and drains to handle the amount of rainwater, surface water and/or groundwater." (ECF No. 2, PageID.64).

---

[1] This matter was referred under the statute authorizing Magistrate Judges to handle non-dispositive matters by way of order. 28 U.S.C. § 636(b)(1)(A); *see also* Fed.R.Civ.P. 72(a). Indeed, "a motion to exclude expert testimony is not a dispositive motion." *Wendorf v. JLG Indus., Inc.*, No. 08-CV-12229, 2010 WL 148255, at *1 (E.D. Mich. Jan. 11, 2010); *see also Paul v. Henri-Line Mach. Tools, Inc.*, No. 10-10832, 2012 WL 6642494, at *3 (E.D. Mich. Dec. 20, 2012); 12 Charles Alan Wright et al, Federal Practice and Procedure §3068.2, n.43 (3d ed., October 20, 2022 update).

Cincinnati also contends that the policy does not cover accidental discharge or overflow of water from sump pumps. (*Id.*, PageID.65-66). In addition, Cincinnati counterclaims for declaratory judgment. (*Id.*, PageID.67-74).

Capital claims that there are no applicable exclusions to the covered loss. *See* ECF No. 17, PageID.1022. According to Capital, the standing water that entered the property did not have the characteristics of surface water under the policy's definition and the sump pump drainage system was properly designed and maintained. *Id.* At the hearing, Capital clarified that Allocco's opinion would go directly to the issue of whether the 'faulty design' exclusion, below, applies to the loss. His testimony would also be relevant to the maintenance issue, but the surface water issue is a legal question addressed by Capital's motion for summary judgment and not before the undersigned. (ECF No. 17).

The relevant policy provisions state that excluded physical loss includes loss caused by water, meaning:

> (1) Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;
>
> (2) Waterborne material carried or otherwise moved by any of the water referred to in C.4.c.(1); or
>
> (3) Water or waterborne material which backs up through sewers or drains, except as provided in Section I, A.5. Additional Coverage o. Sewer or Drain Back Up.

3

(ECF No. 18-7, PageID.1229-1230) (emphasis and internal citation omitted). The policy also excludes "weather conditions" that "contribute in any way with a cause or event [that is] excluded," as well as,

f. Faulty, inadequate or defective:

    (1) Planning, zoning, development, surveying, siting;

    (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    (3) Materials used in repair, construction, renovation or remodeling; or

    (4) Maintenance of part or all of any property whether on or off the "residence premises".

(*Id.*, PageID.1230-1231) (cleaned up). Lastly, the policy covers physical loss "resulting from an accidental discharge or overflow of water or steam from within a plumbing [system] . . . or household appliance," but this "does not include a sump, sump pump or related equipment." (*Id.*, PageID.1231).

### III. Legal Standard

For an expert opinion witness's testimony to be admissible, it must satisfy Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>     (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>     (b) the testimony is based on sufficient facts or data;

4

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The trial judge is the gatekeeper who must ensure that expert testimony is relevant and reliable. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)). The test for determining reliability is flexible and depends on "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150 (internal quotation marks and citation omitted). Indeed, "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142 (citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 143 (1997) (emphasis in original)).

Federal Rule of Evidence 703 governs the bases of experts' opinion testimony as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Rule 703 identifies three types of evidence upon which an expert's opinion may be based: (1) "firsthand observation of the witness"; (2) evidence presented at the trial; and (3) "data [presented] to the expert outside of court and other than by his own perception." Fed. R. Evid. 703 advisory committee's note to 1972 proposed rules.

Although an expert's opinion is not admissible if it is speculative or mere guess work, the court should admit expert testimony if it has a reasonable factual basis. *See United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018) (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)). In such a circumstance, "any remaining challenges merely go to the weight, as opposed to the admissibility, of the expert testimony." *Id*. (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008)). Rule 703 allows an expert witness to testify to an opinion that is supported by inadmissible hearsay evidence. *United States v. Scott*, 716 F. App'x 477, 485 (6th Cir. 2017) (unpublished).

## IV. Discussion

### A. Overview

In seeking to exclude Allocco's expert opinion and report, Cincinnati argues that Allocco was retained solely to examine Cincinnati's engineer Frank Strehl, PE's (Strehl) report, has not examined the subject property himself, and lacks the

6

"knowledge, skill, experience, training, or education to opine on the drainage system." (ECF No. 16, PageID.704). In response, Capital notes that with the water removed and damage mitigated from the subject property, an onsite inspection would have been fruitless, and that Allocco reviewed dozens of pictures of the property, has over 40 years of experience as a professional engineer, and has worked extensively with pumps like the ones on the subject property. (ECF No. 18, PageID.1156-1157).

B. Analysis

Cincinnati raises four issues regarding Allocco's expert opinion and testimony. First, it argues that Allocco lacks the required qualifications and experience to opine on the subject matter. Second, Cincinnati argues that his opinion and testimony are not relevant to the underlying dispute. Third, it contends that the expert report and opinion rely on insufficient facts and data. And fourth, Cincinnati contends that the report and opinion are not based on reliable principles and methods. Each argument will be addressed in turn below.

1. Allocco's Qualifications and Experience

Cincinnati first argues that Allocco is not qualified as an expert to offer his opinion on this matter under Fed. R. Evid. 104(a). Under that rule, he must be qualified based on knowledge, skill, experience, training, or education. Cincinnati cites Allocco's deposition testimony that he does not have much experience with

systems like that of the subject property. Allocco is Florida-based, and most homes there do not have basements. (ECF No. 16-2, PageID.846). He has some experience with sump pumps under houses with crawl spaces, but those are rare. (*Id*.). He is, however, familiar with how they operate and "everything about them," stemming from his experience as a mechanical engineer, including work with ship engine room pumps as a member of the Merchant Marines. (*Id*.). He has never designed a ship pump system, or a system like that on the subject property, but he has designed milk pumping pumps, which are similar to sump pumps. (*Id*.). He has also never evaluated the exact system that uses sump pumps to remove water from residential properties, but he has evaluated petroleum pumping and sewage systems with pumps. (*Id*., PageID.846-847). Cincinnati argues that Allocco's lack of experience and training in dealing with residential sump pumps and drainage systems disqualifies him from offering his opinions in this matter.

Capital responds that "[a] party's expert need not be a 'blue ribbon practitioner' or even have direct experience with the precise subject matter at issue" in order to testify on that issue. *Amber Reineck House v. City of Howell*, No. 20-10203, 2021 WL 6881861, at *15 (E.D. Mich. Sept. 29, 2021)[2] (zoning and planning expert allowed to testify regarding special use permit for sober living

---

[2] *report and recommendation adopted in part, rejected in part,* No. 20-CV-10203, 2022 WL 3082537 (E.D. Mich. Aug. 3, 2022).

home despite no experience with sober living homes or disability discrimination cases) (citing *Jackson v. E-Z-Go Div. of Textron, Inc.*, 326 F. Supp. 3d 375, 387-88 (W.D. Ky. 2018)); *see also United States v. Vargas,* 471 F.3d 255, 262 (1st Cir. 2006) ("It is not required that experts be 'blue-ribbon practitioners' with optimal qualifications"); *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998) (holding that an expert in product safety was qualified to testify as to accident reconstruction, engineering, and child psychology "despite the fact that he ha[d] no background in any of these areas."). Capital notes that Allocco is well-qualified as a Professional Engineer licensed by the State of Florida with over 40 years of experience, has worked with pump systems of many different types, and holds 14 current licenses and certificates, including certificates as a Swimming Pool Contractor, a Roofing Contractor, a Plumbing Contractor, and a Home Inspector. Capital argues that Cincinnati has failed to distinguish Allocco's experience with pump systems in other settings, including Allocco's work as chief engineer for a dairy processing plant, as Cincinnati has not argued how the physics of pumping pasteurized milk would differ from pumping or draining other liquids such as rainwater. The Sixth Circuit has explained, by way of analogy, how expertise in separate but related topics can be relevant:

> [I]f one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness. Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee . . . even if he had never seen a

9

>  bumblebee. . . . On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all might be an acceptable witness if a proper foundation were laid for his conclusions.

*Smith v. Cnty. of Lenawee*, No. 09-10648, 2011 WL 1166661, at *3 (E.D. Mich. Mar. 28, 2011) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1349-1350 (6th Cir. 1994)).

As noted above, Allocco has also inspected and analyzed sump pumps for Florida crawl spaces, petroleum pumping systems, and sewage systems. The undersigned agrees with Capital. Allocco's qualifications and experience allow him to provide expert testimony on this matter. Cincinnati's arguments as to Allocco's lack of specific experience with basement sump pumps goes to the weight of his testimony, not its admissibility.

2. Relevance of Allocco's Report and Testimony

Under the second step of the *Daubert* inquiry, an expert's opinion must be relevant, which means it must 'fit the facts' and relate to an issue in the case. Part of Allocco's opinion is that the Strehl report contained a calculation error about the capacity of pump #2. (ECF No. 16-1, PageID.729-730). Strehl calculated pump #2 to be able to remove 5100 gallons of water per hour (gph), but the simple multiplication of the numbers used to reach that figure shows that the correct figure is 7680 gph. (*Id.*). This is a simple computation error from the Strehl report.

10

The Allocco report also states that "the correct calculation for 2 of the 3 pumps prove that there was adequate pump capacity to keep the basement dry," making the most obvious causation of water damage a "system failure." (*Id.*). He further opines that Strehl's failure to consider the third pump designed into the system is a "critical error." (*Id.*). But Cincinnati notes that in his deposition, Allocco appears to concede that in a 25-year rain event or flood—as Strehl states was the case here—some water is "going to seep through no matter what." (ECF No. 16-2, PageID.849; *see also* ECF No. 16-2, PageID.852 ("Q: Are you saying that even with the pumping system now working 100 percent efficiently given the amount of rain that fell, it is more likely than not that water would have still entered the building? A: Yes.")). According to Cincinnati, this renders Allocco's opinion irrelevant; even if his calculations are correct, water would still have entered the residence.

Capital responds that this argument is factually and legally incorrect. Based on correct calculations using the figures from the Strehl report, Allocco found that the accurate gph figure would result in "an excess amount of capacity for the system." (ECF No. 18-9, PageID.1264). Further, even admitting that some water would have seeped into the basement of the subject property, the *amount* of water that would have been pumped out of the catch basins at the property is relevant to

11

the water damage and whether any or all of the damage falls under the policy's exclusions.

At the hearing, Cincinnati argued that Allocco's opinion—that the water damage was likely due to sump pump failure—is irrelevant because that issue is not actually in dispute. However, Allocco's opinion amounts to the contention that the Strehl report is inaccurate. And as Capital clarified at the hearing, this opinion goes to the relevant policy exclusion of faulty or inadequate system design. Based on the expert reports, Strehl and Allocco disagree on whether the system as designed was adequate to handle the water that besieged the property. Therefore, the undersigned agrees with Capital that Allocco's expert opinion on this issue is relevant.

### 3. Sufficiency of the Underlying Facts and Data

Cincinnati also argues that Allocco's opinions are not based on sufficient facts or data. In support of this claim, Cincinnati notes that Allocco never inspected or tested the pumps at the property or inspected the property or its topography himself. Strehl opined at his deposition that a site visit would be necessary before any engineer could draw conclusions about the cause of an occurrence. (ECF No. 16, PageID.720; ECF No. 16-7, PageID.1006). Strehl also found Allocco's report lacking in that it discounted the fact, from Strehl's report,

that the drainpipe feeding the retention pond was obstructed with vegetation. (*Id*.).[3]

Capital responds by arguing that Rule 703 allows for exactly the type of opinion provided by Allocco. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; s*ee also Counts v. Gen. Motors, LLC*, ___ F. Supp. 3d ___, ___, 2022 WL 2078023, at *26 (E.D. Mich. June 9, 2022) ("Far from *ipse dixit*, basing an expert opinion on another expert's opinion reflects sound judgment. Indeed, a benchmark of any sound analysis is citing or critiquing the opinions of other expert opinions."); *Craton v. Birds Eye Foods, Inc.*, No. 1:10-CV-541, 2013 WL 12421822, at *10 (W.D. Mich. Dec. 20, 2013) (noting that experts "can base their opinions in part on facts, data, conclusions, or opinions from other experts."); Fed. R. Evid. 703 advisory committee's note to 1972 proposed rules ("Thus a physician in his own practice bases his diagnosis on information from numerous sources and

---

[3] Allocco testified at his deposition that if this case were to go to trial, he would conduct other analyses such as reviewing the schematics of the drainage system and investigate the rainfall on August 28, 2020. Cincinnati correctly argues that this is not allowed under the rules. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). However, at the hearing, Capital clarified that it would not seek to have Allocco obtain additional information or supplement his report. He will be asked to testify solely to the information contained in his expert report on direct examination.

of considerable variety, including statements by patients and relatives, reports and *opinions* from nurses, technicians and other doctors, hospital records, and X rays.") (emphasis added).

The undersigned agrees that this method of analysis is contemplated by the Rules and is admissible. Whether Allocco's opinions are less persuasive without having visited the subject property or considering the obstruction of one of the pipes goes to the weight of his opinions, not their admissibility. Thus, the undersigned finds that the facts and data relied upon by Allocco are sufficient to allow him to testify as an expert in this matter.

4. Reliable Principles and Methods

Lastly, Cincinnati argues that Allocco's opinions are not the product of reliable principles and methods. *See* Fed. R. Evid. 702(c). Cincinnati contends that Allocco based his opinion solely on reading Strehl's report, looking at photographs, and using Google for certain information about the property. Cincinnati says that because Allocco does not cite "any industry standards, manufacturing data, outside studies, documentary research, published articles or treatises that would support his opinions," his opinion and report must be rejected. (ECF No. 16, PageID.723).

Again, it is not improper, and is specifically contemplated by the Federal Rules of Evidence, that an expert may analyze and opine on another expert's

14

report. Allocco properly relied upon the information in the Strehl report, including the schematic of the property and the weather records cited therein. (ECF No. 18-9, PageID.1267-1268). He also compared the Strehl report to the available information from the manufacturer of the specific model of sump pump at the property. (*Id.*, PageID.1268-1269). Cincinnati has not provided any authority that Allocco was strictly required to cite to outside data, studies, research, articles, or treatises to support his opinions.

At the hearing, Capital acknowledged that Allocco did not rely on any peer-reviewed materials in coming to his conclusions. Neither did Strehl. And the *Daubert* factors are flexible. *Kumho Tire Co.*, *supra*, at 141. "We also conclude that a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. As the Court stated in *Daubert,* the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id*. (emphasis in original). Here, a strict application of this factor would lead to the exclusion of both Allocco's and Strehl's opinions. Capital acknowledges that this would be an absurd result. The undersigned agrees. As with Cincinnati's other arguments, this fact speaks to the weight of Allocco's opinions, but is not a reason to exclude them.

15

V. Conclusion

In sum, Cincinnati's challenges to Allocco's opinion go to his credibility, *i.e.* the weight a fact finder may give his opinion, not whether his opinion is admissible under the Federal Rules of Evidence and *Daubert*. Accordingly, Cincinnati's motion to exclude Allocco's opinion and testimony, (ECF No. 16), is DENIED.

SO ORDERED.

Dated: November 14, 2022  
Detroit, Michigan

s/Kimberly G. Altman  
KIMBERLY G. ALTMAN  
United States Magistrate Judge

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 14, 2022.

s/Carolyn Ciesla  
CAROLYN CIESLA  
Case Manager