UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAPITAL MORTGAGE SOLUTIONS, LLC,

    Plaintiff,

v.

THE CINCINNATI INSURANCE COMPANY,

    Defendant.
_____/

Case No. 21-cv-10873

Paul D. Borman
United States District Judge

Kimberly G. Altman
United States Magistrate Judge

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDUGMENT (ECF No. 15) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17)

### INTRODUCTION

This case arises out of Plaintiff Capital Mortgage Solutions, LLC's assertion that Defendant Cincinnati Insurance Company improperly denied coverage for water damage to Jason and Lauryn Curis' home. Now before the Court are both parties' Motions for Summary Judgment. For the reasons that follow, the Court will **GRANT** Defendant's Motion and **DENY** Plaintiff's Motion.

### I. STATEMENT OF FACTS

The parties agree on the following facts.

Jason and Lauryn Curis own a home at 32451 Rockridge Lane in Farmington Hills, Michigan. (ECF No. 1, PageID 6.) The back of the home has a "paved patio" in between "a walkout basement" and an "elevated pool" and deck. (ECF No. 15,

1

PageID 366; ECF No. 22, PageID 1330.) The back of the home also has "an extensive underground drain and pumping system to remove rainwater" from that area. (ECF No. 15, PageID 366; ECF No. 22, PageID 1330.)

Defendant Cincinnati Insurance Company "issued a homeowners insurance policy to Jason and Lauryn Curis on th[is] home" with "a policy period of March 15, 2020 to March 15, 2021." (ECF No. 1, PageID 6; ECF No. 15, PageID 365; ECF No. 22, PageID 1329.)

The Policy came with the following exceptions (among others):

> C. . . .
>
> 4. "We" will not pay for "physical loss" resulting directly or indirectly by any of the following. Such "physical loss" is excluded regardless of any other cause or event contributing concurrently or in any sequence to the "physical loss". These exclusions apply whether or not the "physical loss" event results in widespread damage or affects a substantial area.
> . . .
>
> c. Water, meaning:
>
> > (1) Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;
> >
> > (2) Waterborne material carried or otherwise moved by any of the water referred to in **C.4.c.(1)**; or
> >
> > (3) Water or waterborne material which backs up through sewers or drains, except as provided in Section **I, A.5**. Additional Coverage **o.** Sewer or Drain Back Up.

(ECF No. 15-1, PageID 424.)

Section I, A.5.o, as modified by a Special Provisions Endorsement, provided:

> "We" will pay for "physical loss" caused by water or waterborne material which backs through sewers or drains on the "residence premises". A sewer or drain is a pipe connected to the plumbing system, a gutter or downspout, or other drainage pipe that serves to drain water or waste away from the "residence premises". A back up does not include the inability of the sewer or drain to handle the amount of rainwater, surface water or groundwater trying to enter the sewer or drain.

(ECF No. 15-1, PageID 445.)

And the above-listed exception continued:

> This Exclusion (**C.4.c.**) applies regardless of whether any of the above, in **C.4.c.(1)** through **C.4.c.(3)**, is caused by an act of nature or is otherwise caused.
>
> This Exclusion (**C.4.c.**) applies to, but is not limited to, escape, overflow, or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.
>
> However, direct loss by fire, explosion or theft resulting from any of the above, in **C.4.c.(1)** through **C.4.c.(3)**, is covered.

(ECF No. 15-1, PageID 425.)

"On August 28, 2020, 3.7 inches of rain fell at the Curis house." (ECF No. 15, PageID 36; ECF No. 15-4; ECF No. 22, PageID 1330.) The house's "drain and pumping system failed in whole or in part" and water "accumulated" on the patio and "eventually entered the [] basement under its [] doors and windows." (ECF No. 15, PageID 367; ECF No. 22, PageID 1330.) Rainwater also "made its way into the

3

basement at the front of the house." (ECF No. 15, PageID 367; ECF No. 22, PageID 1330.)

Subsequently, the Curises filed a claim for reimbursement for water damage under their Policy with Cincinnati. (ECF No. 15, PageID 367.) On October 23, 2020, Cincinnati denied the claim, explaining:

> Based upon our investigation and EFI's engineering report, the damage for which you make claim was caused by heavy rain in a short period of time which caused flooding and surface water that collected and migrated into your house and around your personal property. With regard to the water damage at the rear of your basement and basement patio, the volume of rainwater that fell during the peak flows exceeded the pumping capacity of your drainage system and your drainage system was unable to handle the volume of rainwater that collected. As outlined above, since the direct cause of the water damage for which you make claim was rain, flood and/or surface water, your Policy excluded coverage for your claimed loss or damage.
>
> While the above-cited water exclusion contains a sewer or drain back up provision that gives back some coverage under certain circumstances, that give back does not apply here because the Policy expressly states that "A back up does not include the inability of the sewer or drain to handle the amount of rainwater, surface water or groundwater trying to enter the sewer or drain." The drainage system was not able to handle the volume of water at the time of the loss. Your Policy makes clear that discharge or overflow of water from a sump, sump pump or related equipment is not covered either.
>
> Moreover, the water exclusion cited above specifically provides that "physical loss" from flood and surface water is excluded "regardless of any other cause or event contributing concurrently or in any sequence to the 'physical loss'. These exclusions apply whether or not the 'physical loss' event results in widespread damage or affects a substantial area." Accordingly, all damage for which you make claim is unfortunately not covered.

4

> With regard to the water entering the basement at the front wall, that too is excluded by both the water and faulty, inadequate and/or defective workmanship and maintenance exclusions found in paragraphs (C)(1)(f) and (C)(4)(c) reproduced above. Although the faulty workmanship exclusion contains an ensuing "physical loss" give back that provides some limited coverage under certain circumstances where a Covered Cause of Loss ensues from an excluded cause of loss, in this case no Covered Cause of Loss ensued from faulty, inadequate or defective workmanship or maintenance.[1]

(ECF No. 15-13, PageID 693–94.)

On November 1, 2020, Jason Curis "assigned his rights to payment under the Cincinnati policy to Plaintiff Capital Mortgage Solutions." (ECF No. 15, PageID 366; ECF No. 15-14; ECF No. 22, PageID 1330.)

## II. PROCEDURAL HISTORY

On March 9, 2021, Capital filed a Complaint challenging Cincinnati's denial of coverage in the Oakland County Circuit Court. (ECF No. 1, PageID 5.) The Complaint contains three causes of action: 1) Breach of Contract; 2) Appraisal; and 3) Violations of the Michigan Uniform Trade Practices Act (MCL 500.2006). (ECF No. 1, PageID 7–9.)

---

[1] "Please note," Cincinnati added, "that there may be other terms and conditions that apply to your claimed loss. Nothing in this letter shall, nor is intended to, waive any policy term or conditions that Cincinnati determines are now or in the future relevant to this claim." (ECF No. 15-13, PageID 694.)

On April 19, 2021, Cincinnati removed the case to this Court. (ECF No. 1.) That same day, Cincinnati answered the Complaint and asserted a counterclaim for a declaratory judgment:

> A. Declaring the validity or non-validity of the assignment [from Curis to Capital];
> B. [Declaring] [t]here is no coverage for Capital Mortgage Solutions, LLC's claim;
> C. Declaring that appraisal and the appointment of appraisers and an umpire shall await a determination of the underlying coverage issues;
> D. Declar[ing] the extent of Capital Mortgage Solutions, LLC's right to any proceeds;
> E. Declar[ing] the extent of Capital Mortgage Solutions, LLC's interest in any proceeds;
> F. Otherwise declaring the rights and obligations of the parties to the insurance contract;
> G. Awarding [Cincinatti] its costs, attorneys' fees and litigation expenses in defending the action and prosecuting this matter; and
> H. For such other and further relief as the Court shall deem just and equitable under the circumstances.

(ECF No. 2, PageID 73–74.)

On June 21, 2021, both parties moved for Summary Judgment. (ECF Nos. 15, 17.) Between July 27 and 28, both parties responded to their counter-parties' motions. (ECF Nos. 20, 22.) And on August 10, Capital replied to Cincinnati's response. (ECF No. 23.) (Cincinnati did not file a reply.) The Court held a Hearing on the motions on May 22, 2023.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). And a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Still, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence. *Anderson*, 477 U.S. at 252. And the Court may only consider evidence that could be presented in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

"The 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Rather, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). In other words, "'[t]he central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

## IV. DISCUSSION

In this diversity jurisdiction case, Michigan's "'substantive law governs.'" *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 360 (6th Cir. 2018) (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 468 (6th Cir. 1996)).

In Michigan, "the construction and interpretation of an insurance [policy] is a question of law for [the] [C]ourt to determine." *Henderson v. State Farm Fire &*

8

*Cas. Co.*, 460 Mich. 348, 353 (1999). The Court "must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Id.* Under these principles, the Court "should not create ambiguity . . . where the terms of the [policy] contract are clear and precise." *Id.* at 354. "The fact that a policy does not define a relevant term does not render the policy ambiguous. Rather, [the Court] must interpret the terms of the contract in accordance with their commonly used meanings." *Id.* (internal citation omitted).

"[W]here there is no ambiguity" in the policy, the Court should enforce its terms "as written." *Id.* Where there is ambiguity, the Court should "construe the [policy] in favor of the insured." *Id.*

Here, the water that entered the Curises' basement from the back patio was surface water. Therefore, the Policy unambiguously excluded coverage for the damage that the water caused, and Cincinnati is entitled to summary judgment.

**A. The water that entered the Curises' basement from the back patio was surface water.**

According to the Michigan Supreme Court in *Fenmode*:

> [S]urface waters are commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence. Such waters are lost by percolation, evaporation or by reaching some definite watercourse or substantial body of water in which they are accustomed to and do flow with other waters.

9

*Fenmode, Inc. v. Aetna Cas. & Surety Co. of Hartford, Conn.*, 303 Mich. 188, 192 (1942).

***Arguments***

Capital argues that "the water that damaged the home and personal property within it had lost the characteristics of surface waters by the time the loss occurred." (ECF No. 17, PageID 1038.) It asserts:

> Water flows to the low point of elevation during any rainstorm. In this case, rainwater or water from the pool travelled to the concrete patio, which was the lowest point on the Property. According to Cincinnati's expert, Frank Strehl, the concrete patio was "in pretty good shape, no significant cracks or anything else like that." Once it reached that point, the "water would have nowhere to drain unless it was pumped out."
>
> In that area, the water lost the characteristics of surface waters, because it was fixed in place by the drainage system. Mr. Strehl described the water as "standing water" in his report. In his deposition, Mr. Strehl was certain that the water was standing and explained the homeowner provided him with photographs of that condition.
>
> Having become fixed in place by the drainage system, the water ceased to be freely flowing over the surface of the earth. Under *Fenmode* and its progeny, the water ceased to be surface water when it reached the low point of elevation and became fixed in place.

(ECF No. 17, PageID 1038–39) (internal citations to ECF No. 17-4, PageID 1079; ECF No. 17-9, PageID 1119–20; and ECF No. 17-10 removed). At the Hearing, Capital added that *Fenmode*'s "casual or vagrant character" clause means that water can only be surface water if it is "flowing" (and not fixed).

10

Capital also argues that "[t]his Court should follow *Front Row Theatre*," in which the Sixth Circuit "held that water which reached the sewer system and entered it, then came out of a nearby manhole, and then entered the building was no longer surface water because it had reached a definite watercourse," "[i]n contrast" to "freely flowing water that travelled over the insured's driveway before entering the building," which "was properly excluded as surface water." (ECF No. 23, PageID 1377) (citing *Front Row Theatre, Inc. v. Am. Mfr.'s Mut. Ins. Cos.*, 18 F.3d 1343, 1347–48 (6th Cir. 1994)); *see also* (ECF No. 22, PageID 1344–46) (making a similar argument).

Cincinnati argues that "the water that entered the front and back of the Curis house was surface water" at the time that it damaged the house, because "surface water remains surface water" for "[a]s long as it remains on the ground," and "ceases being surface water only when it percolates into the ground, evaporates, or flows into a definite watercourse or substantial body of water." (ECF No. 15, PageID 387, 391) (citing *Fenmode, Inc.*, 303 Mich. 188 and Michigan Civil Jurisprudence, *Water, Definition of Surface Water*, § 3). Cincinnati emphasizes that "the term 'ground' applies to more surfaces than the literal earth." (ECF No. 15, PageID 387.) It notes that "[r]ainwater that flows over pavement is considered surface water." (ECF No. 15, PageID 387) (citing *Fenmode, Inc.*, 303 Mich. 188 and *Sunshine Motors, Inc. v. N.H. Ins. Co.*, 209 Mich. App. 58 (1995)). And it asserts that "surface water remains

11

surface water even when it enters a building." (ECF No. 15, PageID 387) (citing *Front Row Theatre, Inc.*, 18 F.3d at 1348; *Sunshine Motors, Inc.*, 209 Mich. App. 58; *Legal Servs. Plan of E. Mich. v. Citizens Ins. Co.*, No. 278110, 2009 WL 1175514 (Mich. Ct. App. Apr. 30, 2009); *Angott v. Great N. Ins. Co.*, No. 05-cv-72115, 2006 WL 1328874 (E.D. Mich. May 15, 2006); and *Com. Ctr. P'ship v. Cincinnati Ins. Co.*, No. 265147, 2006 WL 1236745 (Mich. Ct. App. May 9, 2006)); *see also* (ECF No. 20, PageID 1308) (making the same argument).

*Analysis*

The Court finds that the water that entered the Curises' basement from the back patio was surface water. Capital does not dispute that this water was on the "ground" (the patio and basement floor), was "created by rain," and was not "lost by percolation [or] evaporation." *Fenmode, Inc.*, 303 Mich. at 192.

Despite Capital's argument to the contrary, the water was also "of a casual *or* vagrant character, following no definite course and having no substantial or permanent existence." *Id.* (emphasis added). The water was of a "casual" character because it accumulated on the patio and entered the basement "accidentally" and "without design and without being . . . expected," *Casual*, BLACK'S LAW DICTIONARY (3d ed. 1933[2])—as a result of the drain and pumping system's

---

[2] The Third Edition of Black's Law Dictionary was the edition in effect when the Michigan Supreme Court published *Fenmode* in 1942. The Fourth Edition came out in 1968.

12

failure. The water followed no definite course, given that it veered away from the planned drainage path and instead moved unexpectedly down the patio and into the basement. And the water had no substantial or permanent existence, in that it was not meant to (nor did it) stay on the patio or in the basement for any prolonged period. Indeed, in *Fenmode* itself, the Michigan Supreme Court held that water that "ran down into the driveway" and then "came into [a] store through the back door" met these requirements. *Fenmode, Inc.*, 303 Mich. at 191–92.

Finally, the water did not "reach[] some definite watercourse or substantial body of water in which [it was] accustomed to and d[id] flow with other waters." *Id.* at 192. First, it did not reach anything approaching a watercourse, which is defined as a "*natural* stream of water fed from permanent or periodical natural sources." *Water Course*, BLACK'S LAW DICTIONARY (3d ed. 1933) (emphasis added); *see also Watercourse*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A body of water, usu. of natural origin, flowing in a reasonably definite channel with bed and banks."). Second, it did not reach a "substantial body of water" in which the surface water became "accustomed to" and "flow[ed] with *other* waters," because the pooling at the bottom of the patio consisted of mainly the surface water itself. This water did not, for example, enter the drainage system and flow with the *other* water in that

13

system.[3] Thus, it remained surface water as it collected at the bottom of the patio and eventually moved into the basement. *Cf. Sunshine Motors, Inc.*, 209 Mich. App. at 59 ("[P]laintiff's losses were the result of an unfortunate sequence or concurrence of direct and indirect causes: heavy rainfall creating surface water that failed to drain away because of debris blocking the drainage system.").

*Front Row Theatre* confirms that the water was surface water. In that case, the Sixth Circuit held that water that "entered the sewer system and then exited through the lower manhole before entering the [damaged theater]" was not surface water. *Front Row Theatre, Inc.*, 18 F.3d at 1348. But it also held that the water that "never entered the sewer system at all before" flowing "downhill [across the driveway and curb and] into the theater" *was* surface water. *Id.* at 1345, 1348. The water at issue here resembles the latter far more than the former: it flowed across the patio and then into the basement; it did not enter the sewer system and exit via some later opening along the sewer path.

---

[3] Indeed, Capital asserts that "[t]here is no evidence that backward movement of water occurred or that water flowed or moved in a direction opposite to the intended and usual flow once it reached the drainage system." (ECF No. 22, PageID 1349.)

It is also notable that the policy "does not include [coverage for] the inability of the sewer or drain to handle the amount of rainwater, surface water or groundwater trying to enter the sewer or drain." (ECF No. 15-1, PageID 445.)

14

**B. The Court GRANTS Cincinnati's Motion for Summary Judgment.**

As noted above, the insurance policy specifically excluded damage caused by surface water. *See* ECF No. 15-1, PageID 424. Accordingly, Cincinnati did not breach its contract by denying Capital's claim for coverage of its surface-water-inflicted damages.[4] So Cincinnati's Motion for Summary Judgment on Capital's breach of contract claim is **GRANTED**.

Consequently, Capital's two additional claims, for appraisal and penalty interest, are moot. So Cincinnati's Motion for Summary Judgment on these claims is also **GRANTED**. In turn, Capital's entire Motion for Summary Judgment is **DENIED**.

*

No issues remain. This Opinion satisfies Cincinnati's counterclaim for a declaratory judgment establishing its rights and obligations under the Policy. And Cincinnati has made no effort to "establish[] entitlement" to the attorneys' fees that it requests. *Paige Int'l, Inc. v. XL Specialty Ins. Co.*, 267 F. Supp. 3d 205, 211–12 (D.D.C. 2017) ("'The so-called 'American Rule' governing the award of attorneys'

---

[4] The Court recognizes that its analysis focuses on the water that entered the basement from the back of the house and does not address the water that entered the basement from the front. Cincinnati asserts that this front water was also surface water, and the Court agrees, for the same reasons that led it to find that the back water was surface water. But the Court need not elaborate on this point, because Capital has not made any arguments about the front water, and because the Policy provides that the water exclusion applies "regardless of any other cause or event contributing concurrently or in any sequence to the 'physical loss.'" (ECF No. 15-1, PageID 424.)

fees in litigation in the federal courts is that attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.' When fees are requested, the 'applicant bears the burden of establishing entitlement to an award.'" (internal citations omitted) (quoting *F. D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 126 (1974) (internal quotation marks omitted) and *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))). Therefore, this case is **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons listed above, the Court **GRANTS** Cincinnati's Motion for Summary Judgment, **DENIES** Capital's Motion for Summary Judgment, and **DISMISSES** this case **WITH PREJUDICE**.

**IT IS SO ORDERED.**

s/Paul D. Borman

Dated: May 24, 2023

Paul D. Borman
United States District Judge